Filed 10/30/14  Fait v. American States Ins. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DONNA FAIT et al., | C074549 |
| Plaintiffs and Appellants, | (Super. Ct. No. 3420100089783CUBCGDS) |
| v. | |
| AMERICAN STATES INSURANCE COMPANY, | |
| Defendant and Respondent. | |

Plaintiffs Donna Fait and the Glenn Fait 2005 Trust (collectively Fait) sued defendant American States Insurance Company, alleging Fait was entitled to recovery under an insurance policy after the demolition of a building Fait's predecessor sold, with a retained security interest.  The trial court granted summary judgment on the ground the

1

intentional demolition of the building was not a covered loss under the policy. Fait timely appealed from the ensuing judgment. We shall affirm.[1]

## BACKGROUND

The policy terms and historic facts are not disputed. Briefly, "we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

As stated in our prior opinion, "The owner of a parcel of real property with a building on it demolishes the building to make way for new development. Unfortunately, the owner is unable to complete the development and ends up defaulting on a purchase money promissory note secured by a deed of trust on the property. The holder of the note and deed of trust [Fait] exercises the power of sale under the deed of trust and buys the property back at a foreclosure sale for less than the amount due under the note." (*Fait*, *supra*, 207 Cal.App.4th at p. 289.) Because the owner (collectively, New Faze) failed to maintain insurance as required, after "numerous requests," Fait bought insurance for the property. After the destruction of the building, when Fait acquired the property through foreclosure, Fait made a claim against the policy for the deficiency. Defendant denied the claim, in part alleging no coverage under the policy.

The named insured under the policy in effect at the time of the 2006 demolition is "Fait 1990 Trust [¶] Barbara & Glenn Fait, Trustees." Donna Fait and the Glenn Fait 2005 Trust are successors in interest to the Fait 1990 Trust. Glenn Fait, individually, is

---

[1] A separate case arising out of the demolition of the building was previously before this court. (*Fait v. New Faze Development, Inc.* (2012) 207 Cal.App.4th 284 (*Fait*).) That case apparently awaits retrial. Safeco Insurance Company of America, originally a defendant herein, was dismissed by Fait. Certain other defendants in this action are not parties to this appeal.

sole trustee of both trusts. A "Lender Loss Payee Clause" lists the owners (New Faze, etc.) as loss payees.

Under "Coverage" the policy states: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Under an applicable "Cause of Loss-Special Form," "Covered Causes of Loss means Risks of Direct Physical Loss," with exceptions not relevant. Because Fait admitted the building was *intentionally* destroyed, defendant argued no covered loss occurred, because intentional destruction of a building is not a "fortuitous" risk.

In opposition, Fait argued Fait should have been treated as a "loss payee" under the policy, not an insured. Fait did not ratify demolishing the building. Fait conceded that in October 2005, Glenn Fait read a *Sacramento Bee* article in which New Faze announced the building was "slated to be torn down," and received a letter from New Faze stating it was planning to "demolish" the building and therefore was terminating extant leases. The building was demolished in October 2006. The trust conveyed the property to Fait in April 2007, but Fait did not learn about the demolition until July 2007.

In reply, defendant argued Fait was not a "loss payee" and had not asked to be, and in any event, stood by with actual knowledge of the planned destruction and took no steps to ensure it would not be done before the note was paid off, other than relying on the owners' good faith, demonstrated by declarations filed by Glenn Fait (beneficially interested in, but not a party to, this case) in the *Fait* case (see fn. 1, *ante*) and tendered in this case, stating: "It never occurred to me that the owners . . . would consider demolishing the building prior to paying off the note, as to do so would violate the terms of the trust deed and the law." Fait filed a similar declaration in opposition to summary judgment in this case. In his deposition, Glenn Fait testified nothing in the *Sacramento Bee* stated New Faze was not planning to pay off the note first, and that he had no

discussions with New Faze on that subject. He admitted the demolition of the building "was intentional."

In relevant part, the trial court found as follows:

"[Fait] ha[s] failed to demonstrate a triable issue of material fact that the demolition was not fortuitous and not a covered loss. Glenn admitted that New Faze intentionally demolished the [building]. [Fait]'s argument that the demolition was wrongful and in violation of the deed of trust is not relevant here as such allegations relate to New Faze's actions, not those of Defendant. Additionally, Glenn knew that New Faze intended to demolish the property. While he may not have known of the exact timing of the demolition, he was well aware of New Faze's intent."

## DISCUSSION

### I

### *Fortuitous Loss*

"Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a *contingent or unknown event*." (Ins. Code, § 22, emphasis added.) " 'Property insurance . . . is an agreement, a contract, in which the insurer agrees to indemnify the insured in the event that the insured property suffers a covered loss. Coverage, in turn, is commonly provided by reference to causation, e.g., "loss caused by . . . " certain enumerated perils. [¶] The term "perils" in traditional property insurance parlance refers to fortuitous, active, physical forces such as lightning, wind, and explosion, which bring about the loss.' " (*Garvey v. State Farm* (1989) 48 Cal.3d 395, 406.) " 'Risk' is commonly defined to mean 'the chance of injury, damage, or loss; dangerous chance; hazard' [citation] or 'exposure to the chance of injury or loss; a hazard or dangerous condition.' " (*Doheny West Homeowners' Assn. v. American Guarantee & Liability Ins. Co*. (1997) 60 Cal.App.4th 400, 405, fn. 4; accord *Jernigan v. Nationwide Mutual Ins. Co*. (2006) 2006 U.S. Dist. LEXIS 9571, pp. *23-25 [no coverage, "the demolition of the building was not a 'covered cause of loss' "].)

4

Accordingly, "[t]he concept of 'fortuity' is basic to insurance law. Insurance typically is designed to protect contingent or unknown risks of harm (Ins. Code, §§ 22, 250), not to protect against harm which is certain or expected. [Citation.] Insurance protects against risks of loss, not certainties of loss." (*Chu v. Canadian Indemnity Co.* (1990) 224 Cal.App.3d 86, 94-95.)

Fait does not quarrel with this basic rule. Obviously, there was nothing contingent or unknown about New Faze's decision to destroy the building, but Fait maintains that Fait, as a mortgagee, had nothing to do with that act, and therefore *as to Fait*, the consequence was a fortuitous loss covered by the policy. At oral argument in this court, Fait's counsel conceded there was no claim Fait was misled about the timing of the demolition, and agreed that Fait had knowledge of the impending demolition, but contended Fait had no knowledge this would impair Fait's security interest.

The principal authority relied on by Fait, *Home Savings of America v. Continental Ins. Co.* (2001) 87 Cal.App.4th 835, proves inapposite when read carefully. There, the purchaser--the named insured under a property policy--defaulted. The property was transferred without notice to the lender, and then destroyed. The lender, a named loss payee, sought recovery for the deficiency, claiming the loss was due to theft or vandalism. (*Id*. at pp. 839-840.) The trial court upheld summary judgment, finding intentional demolition is not fortuitous. (*Id*. at pp. 840-841.) But the *Home Savings* court went on to explain that "the demolition of the residence was entirely fortuitous from [the lender's] point of view. There is nothing in the record to show that Home Savings was aware of the plans to tear down the residence." (*Id*. at p. 851.) "Given the absence of any evidence showing that Home Savings approved or ratified the destruction of the residence, we conclude the loss was fortuitous as to Home Savings." (*Id*. at p. 852; see *Wilson v. Farmers Ins. Exchange* (2002) 102 Cal.App.4th 1171, 1175 (*Wilson*) ["the demolition (in *Home Savings*) was accomplished . . . by a third party *entirely without the bank's knowledge*," emphasis added].)

5

In contrast, in this case, well before the demolition, Glenn Fait read about the demolition proposal in the *Sacramento Bee*, yet took no steps to protect the Fait interest in the property. While Fait did not ratify demolition, Fait knew neither Fait nor the trust had been listed as mortgagees or loss payees, ratified Fait's status as a named insured, and stood by without protecting Fait's interest, without even asking New Faze about its financial plans, with knowledge of the planned demolition. At oral argument in this court, Fait's counsel conceded Glenn Fait "did not care" about the demolition, as he had no reason to believe it impaired Fait's security interest, and argued knowledge of the demolition did not make Fait's loss *un*fortuitous. However, it is critical to recall that the policy protected *the building* against "direct physical loss of or damage to" the building, and did not purport to protect Fait's *beneficial interest* therein.

Glenn Fait--a lawyer since 1972, with real estate experience, the general counsel to McGeorge School of Law, and former mayor of Folsom--wrote to the insurance broker in early 2006, stating "you can have [the owners] named [as] the owners with me as an additional insured." Fait never sought to be included as a mortgagee or loss payee, despite a prior letter from the broker, dated October 31, 2005, suggesting that "there should really be a policy written in [the names of the owners] *and showing you as a mortgagee*." (Emphasis added.) Glenn Fait's declaration shows this exchange began when he contacted the broker to point out that the prior year's policy "erroneously listed the 1990 Trust as named insured." Yet Glenn Fait did not explain why, if the prior policy was erroneous, he acquiesced in the trust being a named insured in the next policy, rather than mortgagee or loss payee.

The loss as to Fait was not through "fortuity." Therefore, the trial court properly granted summary judgment on this ground.[2]

---

[2]  Fait argues Fait is an innocent co-insured and should not be barred by the willful acts of New Faze. (See Ins. Code, § 533; *Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 568-569.) But this claim is based on an *exclusion* for willful acts, not

II

*Leave to Amend*

As we have emphasized before, the *pleadings* outline the perimeter of materiality for purposes of assessing a summary judgment motion. (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381-382.) In the complaint, and in opposition to a demurrer, Fait claimed to be an *insured* under the policy, as the policy shows, listing in all caps, "Fait 1990 Trust [¶] Barbara & Glenn Fait, Trustees." In opposition to summary judgment Fait claimed to be a *loss payee*, however, no leave to amend the complaint was sought. "[T]he term 'loss payee' shall include, but not be limited to, any mortgagee of the insured real property." (Ins. Code, § 572.) Leave to amend was not sought until oral argument in the trial court.[3]

The trial court acted within its discretion in denying leave to amend because this theory was not outlined in the complaint, and no request for leave to amend was made until the hearing on the motion. (See *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175-176 ["[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a 'moving target' unbounded by the pleadings"]; *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280; *Van v. Target Corp.* (2007) 155 Cal.App.4th 1375, 1387, fn. 2.)

Accordingly, the trial court properly denied the belated motion to amend.[4]

---

whether the loss otherwise falls within policy coverage prior to any exclusions. As we explained in *Fait*, there are triable issues of fact in Fait's suit against New Faze for waste and impairment of security. (See *Fait*, *supra*, 207 Cal.App.4th at pp. 299-303.)

[3] We do not have the transcript of the summary judgment hearing, but we presume the trial court accurately recited what happened in its ruling incorporated into the judgment. (See, e.g., *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 498.)

[4] Because the granting of summary judgment is supported by the grounds set forth by the trial court, we need not address the parties briefing of issues regarding grounds on which the trial court denied summary judgment. (See *Live Oak Publishing Co. v. Cohagen*

**DISPOSITION**

The judgment is affirmed.  Defendant shall recover from Fait reasonable costs incurred on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                                    DUARTE            , J.



We concur:



    BUTZ            , Acting P. J.



    MAURO          , J.

---

(1991) 234 Cal.App.3d 1277, 1287.)  However, the parties were prudent to brief those issues.  (See *Wilson*, *supra*, 102 Cal.App.4th at p. 1174, fn. 2.)